UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HARLIS WOODS,

    Plaintiff,

v.

DONALD GAETZ, *et al.*,

    Defendants.

Case No. 10-cv-870-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 113) of Magistrate Judge Philip M. Frazier recommending that the Court deny the motions for summary judgment filed by defendants Jimmy Ryan, Sean Wolters, Joe Durham, Monica Greathouse, Matthew Clovis, Shawn Heuer, Timothy Roy, Virgil Smith and Michael Baker (Docs. 72, 95, 100). All of the motions seek summary judgment on the grounds that plaintiff Harlis Woods has not exhausted his administrative remedies before filing suit as required by 42 U.S.C. §1997e(a). Defendants Ryan, Wolters, Durham, Clovis, Heuer, Smith and Baker have objected to the Report (Doc. 119), and Woods has responded to that objection (Doc. 120).

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**I.**     **Background**

Woods filed this suit claiming that the defendants were deliberately indifferent to his

safety by failing to protect him from a physical assault by another inmate on May 25, 2010. The root of his deliberate indifference theory is that he complained to the defendants at various times about the danger he was in from enemy inmates and requested placement in protective custody, but the defendants did nothing in response, some of them telling him he could not apply for protective custody while he was in segregation, as he was until May 17, 2010. On that day, as he claims he had done many times before, Woods claims he filed a grievance about his fears for his safety and prison staff's indifference to his pleas. As with his prior grievances, he never received a response. He believes his grievances were thrown away by security officers.

He filed another grievance on May 30, 2010, about the failure to place him in protective custody. In that grievance he named or described defendant Donald Gaetz, an internal affairs ("IA") officer he spoke to in November 2009 (later identified as Wolters), "an officer," the Assignment Committee and the gallery officer on May 17, 2010 in North 2, cellhouse 3 gallery (later identified as Roy). Woods exhausted this grievance through the final level of administrative review. Woods' complaints were resolved when the director of the Illinois Department of Corrections accepted the recommendation of the Administrative Review Board ("ARB") that Woods be placed in protective custody in the summer of 2010.

Before that decision, Woods filed another grievance on July 18, 2010, complaining of the same danger to his safety and naming an IA officer he spoke to in November 2009 (Wolters), "several officers working in seg," the gallery officer locking him in his cell on May 17, 2010 (Roy), the protective custody assignment committee, Officer Baker, Officer Smith, Officer Drake, Officer Williams, IA Officer Hasemeyer, Sgt. Carter, counselor Shellie Cartwright, mental health worker Greathouse and "any and every staff member I came across." This grievance was not separately addressed because prison officials deemed it duplicative of Woods'

May 30, 2010, grievance. The ARB hearing held for Woods' May 30, 2010, grievance addressed issues raised in the July 18, 2010, grievance.

## II.     The Report and Objections

Magistrate Judge Frazier found that, although Woods' May 30, 2010, grievance did not specifically name or describe defendants Ryan, Wolters, Durham, Greathouse, Clovis, Heuer, Smith and Baker, his pursuit of administrative remedies was nonetheless sufficient to exhaust the administrative remedies as against those defendants. He noted that the ARB, the final step in the grievance process, addressed Woods' grievance on the merits and did not reject it for lack of details required by regulations regarding the administrative remedy process.

Magistrate Judge Frazier relied on *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011), and other similar cases. In *Maddox*, an inmate grieved an allegedly discriminatory prison budget decision to cancel a group religious worship activity. *Id.* at 712. On his grievance form, he did not indicate who the defendants were and he did not attempt to describe them. *Id.* at 714. The Court of Appeals found that since it was clear to prison officials who was responsible for the decision to cancel the group religious worship activity (the defendants in the lawsuit) and because the prison had processed the inmate's grievance on the merits, the grievance "served its function by providing prison officials a fair opportunity to address his complaint." *Id.* at 722. The Court of Appeals explicitly held, "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.* at 722. The Court of Appeals therefore concluded that the inmate had exhausted his administrative remedies against the defendants. *Id.*

Ryan, Wolters, Durham, Clovis, Heuer, Smith and Baker object and attempt to distinguish

3

*Maddox* from their situation. They argue that in *Maddox* the identities of the defendants were obvious from the nature of the grievance, that is, a grievance about an official decision is clearly directed at those responsible for the decision, and the prison should know who those individuals are. Also in *Maddox*, the grievance did not name *any* defendant, yet the prison treated it as adequate in light of this clear procedural deficiency. Here, the objectors argue, there is no logical person against whom the prison would know Woods' grievance is directed in the absence of a name or description. Furthermore, the prison did not clearly overlook a facial procedural deficiency to reach the merits. On the contrary, the fact that the grievance named some defendants meant it was not facially deficient, and the prison did not forego enforcing one of its own rules. Thus, the objectors believe it is distinguishable from *Maddox*.

### III.     Analysis

In order to satisfy the exhaustion requirement of 28 U.S.C. § 1997e(a), a prisoner's grievance and appeal must be filed "in the place, and at the time, the prison's administrative rules require . . . [and] . . . contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (internal citation and quotations omitted); *see Woodford*, 548 U.S. at 90, 93 (requiring "proper exhaustion," that is, compliance with administrative deadlines and other critical procedural rules so the agency can address the issues on the merits). IDOC requires grievances to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and *the name of each person who is the subject of or who is otherwise involved in the complaint. . . . [or] as much descriptive information about the individual as possible*." 20 Ill. Admin. Code § 504.810(b) (2003) (emphasis added).

As a preliminary matter, Woods' grievance is distinguishable from that in *Maddox*. It

was not procedurally defective such that prison officials could have rejected it on that basis. It named and described some defendants, it was not late, and it apparently complied with other procedural rules. There is no reason prison officials should have been on notice that other officials not named or described in the grievance had done anything wrong to Woods. Thus, this is not a situation where prison officials should be found to have waived their procedural requirements by processing Woods' grievance on the merits.

Thus, the Court believes the failure to exhaust question boils down to whether it could be ascertained from the grievance proceedings what had allegedly been done wrong to Woods and who was at fault for doing it. The Court examines each objector's situation in turn and will consider the content of his May 30, 2010, *and* July 18, 2010, grievances in that examination. The Court considers both grievances because prison officials construed the second as "duplicative" of the first. Thus, prison officials either deemed all the allegations in the second included in the first – a decision which the Court will not second-guess in the context of an asserted exhaustion defense – or effectively made remedies pursuant to the second grievance unavailable to him. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (a prisoner must exhaust only remedies that are available to him).

Wolters: The May 30, 2010, grievance states that Woods shared his safety concerns with an IA officer but the officer did nothing in response. Later filings indicate the IA officer was Wolters. There is enough information in the May 30, 2010, grievance to allow prison officials, with reference to prison records, to identify Wolters as the IA officer that allegedly ignored Woods' safety concerns. Thus, the grievance sufficiently identifies Wolters, and Woods' claims against him will not be dismissed for failure to exhaust administrative remedies.

Ryan: Neither the May 30, 2010, grievance nor the July 18, 2010, grievance mentions

Ryan by name or describes him as Woods' counselor.  However, the July 18, 2010, grievance states that Woods complained about threats to his safety to "any and every staff member I came across."  While this would not be sufficient to alert the prison to wrongdoing by any prison staff member no matter what his relationship to Woods, it is enough to alert the prison that the counselor assigned to check in on Woods and handle his complaints is one of the many people Woods believed has wronged him.  Woods' claim against Ryan will not be dismissed for failure to exhaust administrative remedies.

Durham:  Woods alleges that his May 17, 2010, grievance named "the major of seg" (*see* Compl., Doc. 1, Exh. B, Woods' recreation of his May 17, 2010, grievance), who was Durham.  Woods claims he was not able to exhaust this grievance because officers threw away his grievance and, as a consequence, he never received a response and was unable to further pursue administrative remedies.  Durham has not carried his burden of showing that Woods failed to exhaust his available administrative remedies against him with respect to his alleged May 17, 2010, grievance.  Therefore, Woods' claims against him will not be dismissed for failure to exhaust administrative remedies.

Clovis, Heuer, Smith and Baker:  Woods alleges he filed a grievance about these defendants' indifference to his safety needs in mid-May 2010 but that he never received a response to that grievance because officers threw it away (*see* Pl.'s Resps. to Mots. for Summ. J., Docs. 86 & 106, Woods' Aff. at ¶ 15).  These defendants have not carried their burden of showing that Woods failed to exhaust his available administrative remedies against them with respect to his alleged mid-May 2010, grievance.  Therefore, Woods' claims against them will not be dismissed for failure to exhaust administrative remedies.

Similar rationale for rejecting the failure to exhaust defense applies to the defendants who

have not objected to the Report.

Although the Court arrives at the same conclusion as the Report, it does so for different reasons. Adopting the rationale of the Report based on *Maddox* would threaten to eviscerate the Illinois Administrative Code's requirement that a grievant identify in his grievance those he believes have harmed him, a step the Court is unwilling to take at this point. This is not the case to adopt such a generous exhaustion standard because a conventional understanding of the exhaustion requirement is sufficient to resolve the pending motions.

**IV.   Conclusion**

For the foregoing reasons, the Court **ADOPTS** the Report (Doc. 113) as **MODIFIED** by this order, **REJECTS** the objections filed by defendants Ryan, Wolters, Durham, Clovis, Heuer, Smith and Baker (Doc. 119) and **DENIES** the defendants' motions for summary judgment based on the failure to exhaust administrative remedies defense (Docs. 72, 95 & 100).

**IT IS SO ORDERED.**
**DATED:  April 2, 2012**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**