**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| HARLIS WOODS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| -vs- | ) | **No. 10-cv-870-JPG-PMF** |
| | ) | |
| DONALD GAETZ, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is defendant Monica Greathouse's motion for summary judgment (Doc. No. 124). Plaintiff Harlis Woods is proceeding on a § 1983 claim challenging the conditions of his former confinement at Menard Correctional Center, based on allegations that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Woods alleges that Greathouse, a mental health counselor, failed to take reasonable steps to prevent injury flowing from an attack by a hostile inmate on May 25, 2010. Greathouse argues that the facts could not support the conclusion that her conduct satisfied the legal standard for Eighth Amendment culpability. The motion is opposed (Doc. No. 153). A reply is on file (Doc. No. 155).

Summary judgment will be entered if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

The material facts are not in dispute. While confined at Menard Correctional Center in October, 2009, Woods received correspondence from another inmate which he interpreted as a threat

of harm.   The threat probably arose from Woods' disassociation from the Satan Disciples street/prison gang and his particular criminal history.  Woods shared the correspondence or described the nature of the threat to numerous prison employees and sought protection through a housing reassignment to the protective custody unit.  Woods' concerns were evaluated by the internal affairs division.  A correctional counselor helped Woods submit a written request for protective custody. Woods was interviewed by members of a committee, who were informed about the internal affairs department investigation.  The warden signed off on the committee's decision to reject Woods' requested housing reassignment.

In late February or early March,  2010, Woods wrote to defendant Greathouse, who issued a call-pass.  At that time, Woods was assigned to a cell in the prison's disciplinary segregation unit, where he shared a cell with another inmate.  Woods spoke with Greathouse, shared his concerns and frustrations, and described his various unsuccessful efforts to be approved for protective custody housing status.  Greathouse, assigned to perform the job of mental health counselor, responded by explaining that she could not assist Woods in his quest for a protective custody housing assignment. She took no steps to protect Woods from assault, although she could have written to the warden, made a notation in Woods' mental health record, notified someone else that Woods had expressed safety concerns, or used her influence to draw more attention to his problem.   At the time, Greathouse may have been aware of safety regulations, which direct employees to notify the warden when an inmate requests protective custody.  20 Ill. Admin. Code 501.320(a); Doc. No. 153-2, pp. 17-20).

Woods remained in disciplinary segregation until May 17, 2010.  Upon his release from the segregation unit, he was assigned to a single-man cell in the North 2 cell-house, an area commonly

used to house inmates who were unsuccessful when seeking protective custody status. On May 25, 2010, Woods went to the exercise yard. As he approached the yard, he came into contact with prisoners from other housing units. He was attacked and physically assaulted by inmate Aquello. The motive for the attack may have been related to the threat made to Woods in October, 2009.

Prison officials have a duty to protect inmates from violent assaults by other inmates. They incur liability for the breach of that duty when they are aware of a substantial risk of serious injury to an inmate but nevertheless failed to take appropriate steps to protect him from a known danger. In other words, the defendant must subject the inmate to a substantial risk of serious harm by acting or failing to act with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A prisoner can prove actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991). Evidence that a defendant did nothing when he could have gone beyond the requirements of his job does not show deliberate indifference. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

The facts gleaned from the materials submitted could not reasonably support an inference that defendant Greathouse actually knew that Woods faced a substantial risk of serious harm and responded in a manner that would amount to deliberate indifference. A trier of fact might reasonably conclude that Greathouse suspected that Woods' safety concerns could be valid if he did not achieve the desired housing reassignment upon his release from the segregation unit. In these circumstances, her failure to volunteer to expand the scope of her mental health counselor duties by notifying others or by advocating in favor of a housing reassignment does not reflect actual knowledge of a specific risk or the culpability needed to support Eighth Amendment liability.

IT IS RECOMMENDED that defendant Greathouse's motion for summary judgment (Doc.

No. 124) be GRANTED.  At the conclusion of this case, judgment in favor or Greathouse should be

entered on plaintiff's Eighth Amendment claim (Count 1 of the Amended Complaint).

**SUBMITTED:   September 10, 2012**

                      **S/Philip M. Frazier**
                      **PHILIP M. FRAZIER**
                      **United States Magistrate Judge**