**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| HARLIS WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:10-cv-00870-JPG-PMF |
| | ) | |
| DONALD GAETZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 156).   In Count 1 of his Amended Complaint, plaintiff Harlis Woods make a § 1983 claim challenging the conditions of his former confinement at Menard Correctional Center.   He alleges that a number of correctional employees violated the Eighth Amendment by failing to protect him from a physical assault by a hostile member of the Satan Disciples (SDs) prison gang (Doc. No. 76).   The defendant correctional employees seek judgment in their favor, arguing that they did not act with deliberate indifference or are protected by the doctrine of qualified immunity (Doc. Nos. 156, 157).   The motion is opposed on the basis that factual disputes preclude summary judgment (Doc. No. 164).

Summary judgment is appropriate when the full record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Thomas v. H & R Block Eastern Enters*, 630 F.3d 659, 663 (7th Cir.2011); *see also* Fed. R. Civ. P. 56(a).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).   In order to be a "genuine" issue, there must be more than "some metaphysical

doubt as to the material facts."   *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Anderson*, 477 U.S. at 248.

In deciding whether summary judgment should be granted, the Court construes all facts and draws all reasonable inferences in favor of the nonmoving party.   *Thomas,* 630 F.3d at 663; *see also Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 545 (7th Cir. 2008).   The party opposing the motion must present genuine, admissible evidence that shows a factual dispute.   *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## I.    Background

Beginning in October, 2009, inmate members of the SDs began threatening to cause Woods physical harm and informed Woods of that intent in writing.   Woods became a target for a violent assault for several reasons.   One reason was Woods' status as a former SD.   Woods' decision to leave the gang was considered a punishable violation of gang rules.   Woods' criminal behavior also served as motivation for a physical assault.   The SDs prohibit rape; Woods is serving sentences on three counts of aggravated criminal sexual assault.   Another reason was a rumor that the victim of one of Woods' crimes was the mother of a member of a different gang – the Latin Kings.   The rumor further motivated SDs to carry out an assault.

Woods forwarded the written threats to defendant Donald Gaetz.   At some point, he was moved to the prison's protective custody unit pending a committee evaluation of the nature and extent of his safety concerns.[1]   Woods was deemed ineligible for protective custody on December 10, 2009.   Defendant Gaetz approved the committee decision.

---

[1]  The materials do no identify the person or persons who arranged for Woods to be transferred to the protective custody unit.

Between December 10, 2009, and May 17, 2010, Woods was separated from the general prison population.   Initially, he was held in the protective custody unit on "kick-out" status.   In January, 2010, he was moved to the segregation unit.   While housed in segregation, Woods received additional threats of harm from SDs.

In February, 2010, Woods sent written correspondence to defendants Joe Durham, Jimmy Ryan, Sean Wolters, and Gaetz, seeking to be protected from hostile SDs upon his release from segregation.   In April, 2010, Woods spoke with Ryan about his safety concerns.   Ryan suggested that Woods file a grievance.

On May 17, 2010, Woods was released from segregation and assigned to a single-man cell in the North 2 cell house.   At that time, inmates in the North 2 cell house shared an exercise yard with general population inmates housed in the East cell house.   Woods shared his concerns about the risk that he would be assaulted by hostile SDs with several correctional employees working in the North 2 cell house.   Woods asked defendant Timothy Roy for protective custody and described his specific concerns about an assault by hostile SDs.   Roy told Woods that he did not need protective custody because he was not sharing his cell with another inmate. Woods explained that a single-man cell did not protect him from assault in the chow hall or the exercise yard.   Roy suggested that Woods write a grievance.

Between May 17 and 25, 2010, Woods asked defendants Michael Baker, Sean Heuer, Matthew Colvis, and Virgil Smith for protective custody.   Baker responded by referring to Woods as a "little bitch."   Heuer, Colvis, and Smith taunted Woods and joked about his pleas for help.

Throughout Woods' confinement at Menard, safety regulations directed correctional employees to notify the warden when an inmate asks for protective custody.   20 Ill. Admin. Code 501.320(a).

3

On May 25, 2010, Woods went to the exercise yard.   He stayed close to the gate, where correctional officers were guarding the entrance.   As inmates arrived from the East cell house, Woods was attacked and physically assaulted by inmate Rolando Aquello, an SD.[2]   Woods attempted to defend himself, and the ensuing fight was broken up by officers using chemical agents.   Woods suffered chemical burns and injuries to his neck, groin, stomach and back.

On July 26, 2010, Woods was approved for protective custody.

## II.     Deliberate Indifference

To succeed on his Eighth Amendment claim, Woods must prove that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendants acted with deliberate indifference to his health or safety.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A failure to provide protection amounts to deliberate indifference when the response "effectively condones the attack by allowing it to happen." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

Defendants Gaetz, Durham, Wolters, Ryan, Roy, Heuer, Baker, Smith, and Colvis advance several arguments in suggesting that they are entitled to judgment in their favor.[3]   Woods responds that these defendants took no steps to protect him after being alerted to a substantial risk that he would be harmed by hostile SDs.

The first argument is that the defendants cannot be liable in the absence of a nexus between

---

[2]  A statement describing the motive for Aquello's conduct is not considered, as the statement is not based on personal knowledge.   Fed. R. Civ. P. 56(c)(4).

[3]  The defense argument is accompanied by a selective and occasionally inaccurate discussion of the evidence (Doc. No. 157).   In determining whether the arguments have merit, the Court has carefully reviewed all facts, including verified allegations in the Amended Complaint that appear to be based on personal knowledge.   *Ford v. Wilson*, 90 F.3d 245, 246-47(7th Cir. 1996).   A reply brief (Doc. No. 167) does not meet the exceptional circumstances requirement of Local Rule 7.1(c).

4

the particular harm feared and the actual injury realized (Doc. No. 157, p. 9-12). This argument appears to be based on a degree of confusion regarding the gang affiliation of the assaulting inmate: Rolando Aquello. A careful reading of verified allegations in Woods' Amended Complaint and relevant portions of his deposition testimony identifies Aquello as a member of the SDs – the same gang that threatened to inflict harm (Doc. No. 76, pp. 8, 10; Doc. No. 164, p. 20). This argument lacks merit.

Relying on *Schall v. Rowe*, 460 F.Supp. 155 (D.C. Ill 1978), the defendants also argue that their refusal to move Woods back to the protective custody unit after he was released from segregation could not amount to an Eighth Amendment violation. In *Schall*, the district court evaluated allegations demonstrating that the defendants investigated Schall's circumstances and evaluated his request for a transfer. The response to Schall's concerns was deemed negligent, at worst. The argument lacks merit here because the defendants do not point to facts suggesting that their response to Woods' concerns about being assaulted by a hostile SD would be necessarily characterized as negligence rather than indifference. Viewing the evidence in plaintiff's favor as mandated during the summary judgment phase of litigation, reasonable jurors could conclude that Woods' legitimate concerns were ignored between February and May, 2010.

The defendants also argue that they are not under any duty to override or second guess the protective custody committee's December 10, 2009, decision. They also suggest that Woods failed to articulate a new threat of harm. If factually supported, these arguments might persuade a jury to find in favor of a defendant or defendants. Nevertheless, it would be improper to award summary judgment by assuming facts not in evidence or by drawing inferences in favor of the defense. Plaintiff has presented sufficient evidence suggesting that he can prove the element of deliberate indifference.

### III.    Qualified Immunity

Defendants seek qualified immunity.   The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate established statutory or constitutional rights about which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) citing *Pearson v. Callahan*, 555 U.S. 223 (2009).   On a qualified immunity claim, the Court confronts two questions: (1) whether plaintiff makes out a deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the defendants' conduct.   *McAllister*, 615 F.3d at 881.

Defendants focus on the second inquiry, suggesting that Woods did not have a clearly established right to be housed in a protective custody unit or to be reconsidered for protective custody following a committee finding that he was ineligible.   They further suggest that the law allows them to respect or abide by the committee's decision.   Woods responds that qualified immunity is not available to defendants who act outside the scope of their duties by doing nothing when they should have alerted the warden.   Also, he suggests that the committee decision was nullified by subsequent events, including new threats of harm and a stint in the segregation unit.

The Court is satisfied that, between February and May, 2010, Woods had a clearly established right to be protected from physical assault by hostile gang members during his prison confinement.   *Farmer v. Brennan*, 511 U.S. 825 (1994)(recognizing that prison officials have a duty to protect inmates from assault); *Soto v. Johansen*, 137 F.3d 980 (7th Cir. 1998)(recognizing that prison officials have a duty to take reasonable steps to ensure that inmates are safe from violent acts of other inmates).   Because Woods can show that the defendants took no steps to protect him from hostile SDs during this period of his confinement, the qualified immunity defense lacks merit.

## IV.    Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 156) be DENIED.

IT IS FURTHER RECOMMENDED that the following facts be deemed established pursuant to Rule 56(g):

(1).    Between October, 2009 and May, 2010, Woods faced a risk of being physically assaulted by a hostile member of the Satan Disciples prison gang.

(2).    In October, 2009, Woods requested protective custody.

(3).    On December 10, 2009, Woods' request for protective custody was denied by a committee.

(4).    Between December 10, 2009, and May 17, 2010, Woods was separated from the general prison population.

(5).    On May 17, 2010, Woods was released from segregation and assigned to a single-man cell in the North 2 cell house.  At that time, inmates in North 2 shared the exercise yard with general population inmates in the East cell house.

(6).    In 2010, a safety regulation required correctional officers to notify the warden when an inmate requested protective custody.

(7).    Between January and May 25, 2010, Woods requested protection from the following defendants: Donald Gaetz, Joe Durham, Sean Wolters, Jimmy Ryan, Timothy Roy, Shawn Heuer, Michael Baker, Virgil Smith, and Matthew Colvis.

(8).    On May 25, 2010, Woods was physically assaulted by inmate Aquello, a member of the Satan Disciples.   The assault took place on the prison exercise yard.

**SUBMITTED:**   **March 6, 2013**   .

  **s/Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**

7